IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

AMBER JONES, et al.,                    )
                                        )
Plaintiffs,                             )
                                        )
v.                                      )      No. 3:19-cv-00740
                                        )
STOVER DIAGNOSTICS, INC., et al.,       )      JUDGE RICHARDSON
                                        )
Defendants.                             )
                                        )

## DEFAULT JUDGMENT AND ORDER

Named Plaintiffs (Amber Jones, Victoria Lugo, and Regan Sliger), on behalf of themselves and all others similarly situated filed a motion for default judgment. (Doc. No. 140, "Motion"). Defendants Stover Diagnostics, Inc., Stover Medical Logistics, Inc., and Stover Medical Physicians Services, LLC have failed to respond. For the reasons stated herein, Plaintiffs' Motion is granted.

## PROCEDURAL HISTORY

On August 29, 2019, Plaintiffs Amber Jones and Victoria Lugo on behalf of themselves and all others similarly situated commenced this action, filing a complaint against Defendants Stover Diagnostics, Inc., Stover Medical Logistics, Inc., and Stover Medical Physicians Services, LLC ("Entity Defendants") seeking to recover unpaid compensation, including unpaid minimum wages, overtime compensation, and liquated damages, under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 206, 207. (Doc. No. 1). The Entity Defendants filed an answer on October 18, 2019. (Doc. No. 22). Plaintiffs filed a first amended complaint on January 15, 2020, including a new named plaintiff, Regan Sliger, and consequently, a new

state-law cause of action. (Doc. No. 52). On January 29, 2020, Defendants filed an answer (Doc. No. 55).

Shortly thereafter, counsel for the Entity Defendants filed a motion to withdraw as counsel of record in this case. (Doc. No. 67). In an order dated February 19, 2020, the Court granted that motion and instructed Entity Defendants, who as legal entities cannot represent themselves pro se as could a natural person, to secure new counsel by March 27, 2020. (Doc. No. 72). The Entity Defendants did not obtain new counsel as required, and they remain unrepresented to this date. Plaintiffs filed a second amended complaint, including a new Defendant—this one a natural person, Matthew Stover. (Doc. No. 87). On August 24, 2020, Plaintiffs filed a third amended complaint (Doc. No. 93, "Complaint"), which currently is the operative complaint. The Complaint dropped the state-law claim but retained all of the other claims and asserted them against all Defendants.

In a consent order dated December 16, 2019, while the original complaint was still the operative complaint, the Court conditionally certified a class of potential opt-in plaintiffs stipulated by the Parties. (Doc. No. 43).[1] Subsequently, sixty-six employees have filed a notice of consent to become party plaintiffs under 29 U.S.C. § 216(b). (Attachments to Doc. Nos. 6-10, 13, 18, 21, 23, 32, 56–64, 66, 71, 73-80, 83-85). Forty-three of these opt-in plaintiffs have submitted declarations estimating all unpaid wages of their respective minimum wages and overtime wages. (Doc. Nos. 141 and 142).

Plaintiffs filed a motion for entry of default against the Entity Defendants and Stover (Doc. No. 95), which was denied without prejudice by the Clerk of Court for failure "to sufficiently provide proof of service on Defendants." (Doc. No. 96). On Plaintiffs' second

---

[1] As described below, the law in this circuit has since changed regarding what was previously referred to as "conditional certification." *See infra* note 5.

motion for an entry of default (Doc. No. 120), the Clerk of Court granted the motion on June 29, 2023, pursuant to Federal Rule of Civil Procedure 55(a), with respect to the Entity Defendants but not Stover. (Doc. No. 121). The claims against Stover were dismissed without prejudice for failure to effect service of process pursuant to Federal Rule of Civil Procedure 4(m). (Doc. No. 136).

Plaintiffs have requested a judgment in favor of those Plaintiffs (and only those Plaintiffs) who provided declarations estimating their damages and "a final judgment disposing of all parties and claims." (Doc. No. 141 at 1 n.2).

## FACTUAL BACKGROUND[2]

Defendants Stover Diagnostics Laboratories, Inc. and Stover Medical Logistics, Inc. are both Missouri corporations that conduct business within the Middle District of Tennessee. Defendant Stover Medical Physician Services, LLC is a Missouri limited liability company that also does business within the Middle District of Tennessee. These Defendants (the Entity Defendants) provide mobile phlebotomy services in eighteen different states. These services are performed by mobile phlebotomists who travel to both patients' homes and nursing facilities to perform blood draws and take urine and stool samples. Once completed, the mobile phlebotomists take the samples and either drive or ship them to the Entity Defendants' laboratory in Missouri. The Entity Defendants create and provide the mobile phlebotomists with their schedule each day detailing "number of patients to visit, which patients to visit, and distance to be driven each day." (Doc. No. 93 at 5).

---

[2] As explained later in the opinion, once the Clerk of Court enters an entry of default (as she has done here), Plaintiffs' well-pleaded factual allegations in the Complaint are deemed true except for damages. Any use of the present tense in this opinion is reflective of the prevailing state of affairs at the time of the Complaint.

Due to the nature of their work, mobile phlebotomists drive hundreds of miles each day. Although Entity Defendants provide all equipment necessary for the employee to perform their services, mobile phlebotomists are required to use their personal vehicles to travel between scheduled visits.

Plaintiff Amber Jones was employed by the Entity Defendants from on or about March 8, 2018, to May 7, 2019, as a mobile phlebotomist. (*Id.* at 1). She worked for the Entity Defendants all over the Southeast, including Tennessee where she resided. On occasion, Plaintiff Jones went as far as Pennsylvania and Maryland as a mobile phlebotomist. She traveled in her personal vehicle as far as hundreds of miles each day to "draw blood and take urine and stool samples from patients in their homes and skilled nursing facilities and to drop off those samples at the end of each day." (*Id.*).

Plaintiff Victoria Lugo was employed by the Entity Defendants from about March 24, 2018 to late July 2019 as a mobile phlebotomist in the Southeast area, with her primary place of residence in Tennessee. She traveled hundreds of miles a day in her personal vehicle to perform her duties as a phlebotomist, which were similar to those performed by Plaintiff Jones.

The last-named Plaintiff, Regan Sliger, was employed by the Entity Defendants from on or about December 15, 2015 until on or around February 26, 2018 as a mobile phlebotomist, with her primary residence in Missouri. Plaintiff Sliger traveled hundreds of miles a day to states such as Illinois, Indiana, and Tennessee to perform her duties as a phlebotomist.

<u>LEGAL STANDARD</u>

Default judgments are governed by Federal Rule of Civil Procedure 55. "Once default is entered by the Clerk pursuant to Rule 55(a), the defaulting party is deemed to have admitted all the well-pleaded factual allegations in the complaint regarding liability, including

jurisdictional averments." *Harbold v. Smash Restro & Bar, LLC*, No. 5:22-cv-1583, 2023 WL 4085309, at *2 (N.D. Ohio June 20, 2023) (citing *Ford Motor Co. v. Cross*, 441 F. Supp. 2d 837, 846 (E.D. Mich. 2006)).[3] This admission, however, does not resolve issues related to damages, as "the district court must undertake an inquiry 'to ascertain the amount of damages with reasonable certainty.'" *See Williams v. Road Scholar Staffing, Inc.*, No. 3:21-cv-00052, 2022 WL 2678727, at *2 (M.D. Tenn. July 11, 2022) (quoting *Zinganything, LLC v. Imp. Store*, 158 F. Supp. 3d 668, 670 (N.D. Ohio 2016)).

Further, the district court has discretion in deciding a motion for default judgment under Federal Rule of Civil Procedure 55(b)(2), *see Williams*, 2022 WL 2678727, at *2 (citation omitted), and parties are not automatically entitled to a default judgment, *see Harbold*, 2023 WL 4085309, at *2. Rather, the district court must determine whether the factual allegations in the complaint that are deemed admitted by the entry of default and "reasonable inferences derived therefrom[] are sufficient to satisfy the elements of the plaintiffs' claims for which they seek default judgment." *See id.*; *see also Kwik-Sew Pattern Co. v. Gendron*, No. 1:08-cv-309, 2008 WL 4960159, at *1 (W.D. Mich. Nov. 19, 2008) (finding that a district court may not enter a default judgment upon a "legally insufficient claim").

## ANALYSIS

Prior to determining whether the Plaintiffs' claims meet the elements of an FLSA claim, the Court must determine that it is authorized to enter default judgment as to the opt-in plaintiffs. Next, the Court must find that Plaintiffs fall under FLSA's coverage and definition

---

[3] "[A] claim, to be 'well-pleaded', must at least satisfy 'Rule 8(a) of the Federal Rules of Civil Procedure, which sets forth the basic federal pleading requirement that a complaint "shall contain a short and plain statement of the claim showing that the pleader is entitled to relief." ' " *Utility Serv. Corp. of Huntsville v. Ground Support, LLC*, No. 3:18-cv-00460, 2019 WL 4736933, *1 (M.D. Tenn. Sept. 27, 2019) (internal punctuation and quotation marks omitted) (quoting *Dalmayer v. Michigan*, No. 08-12784, 2009 WL 1378322, at *2 (E.D. Mich. May 14, 2009)).

of "employee" and if Plaintiffs have properly claimed that the Entity Defendants misidentified Plaintiffs as independent contractors rather than as employees. If so, the Court will decide whether Plaintiffs allegations suffice to establish liability and their claimed damages.

## 1. Forty-Three Opt-In Plaintiffs are Properly Before the Court and Should Be Bound by the Judgment

The Complaint properly referred to "Plaintiffs" to mean the named plaintiffs and separately specified the category of "those they seek to represent." However, Plaintiffs' briefing in support of default judgment assumes that the opt-in plaintiffs have been properly joined, using "Plaintiffs" to describe both the named plaintiffs and those "who joined this case." (Doc. No. 141 at 1 n.2). As described below, the Court had yet to recognize conclusively that those potential plaintiffs are in fact plaintiffs in this case. As such, the Court will begin by determining whether they should be deemed joined, as assumed in the briefing. The Court will then turn to the request for judgment on a subset of the opt-in plaintiffs.

### A.  Conclusively Recognizing Opt-In Plaintiffs

The Court must first determine whether the Court can reach a final judgment on behalf of all of the opt-in plaintiffs. Section 16(b) of the FLSA, allows a named plaintiff to bring a cause of action on behalf of himself or herself and other "similarly situated" employees who "consent in writing" to becoming plaintiffs in the action. *See Williams*, 2022 WL 2678727, at *2 (quoting 29 U.S.C. § 216(b)). The upshot of Section 16(b), as recently interpreted by the Sixth Circuit's watershed opinion in *Clark v. A&L Homecare & Training Ctr., LLC*, 68 F.4th 1003, 1009 (6th Cir. 2023), is that it broadens the joinder rules for FLSA claims beyond what they otherwise would be; that is, even if joinder of "similarly situated" other employees otherwise would be improper under the Federal Rules of Civil Procedure, such joinder is proper

under Section 16(b).[4] At the present juncture in the instant case, the opt-in plaintiffs have only

been conditionally recognized, (Doc. No. 43), and as the Sixth Circuit has recently emphasized,

"'other employees' become parties to an FLSA suit (as opposed to mere recipients of notice)

only after they opt in *and* the district court determines—not conditionally, but conclusively—

that each of them is in fact 'similarly situated' to the original plaintiffs."[5] *Clark v. A&L*

*Homecare & Training Ctr., LLC*, 68 F.4th 1003, 1009 (6th Cir. 2023) (citing 29 U.S.C. §

216(b); *Canaday*, 9 F.4th at 403) (emphasis added). *See also id.* ("the notice determination has

zero effect on the character of the underlying suit.").

---

[4] Prior to *Clark*, Section 16(b) was considered to authorize an FLSA class (or "collective," a term used synonymously with "class" in this context) action. *Clark* was quite clear that this is not actually how Section 16(b) functions; rather than authorizing a class or collective action comprising employees "similarly situated" to the named plaintiff(s), it serves to allow joinder of all such similarly situated employees even if joinder would not be proper under the general standards of joinder.

[5] In *Clark*, the Sixth Circuit changed the process by which potential plaintiffs receive notice and become party to an FLSA action. *See Clark v. A&L Homecare and Training Center, LLC*, 68 F.4th 1003, 1010 (6th Cir. 2023). Prior to *Clark*, courts applied a two-step, so-called "certification" process in FLSA for collective actions. First, the named plaintiffs were required to make a "modest factual showing" that they were "similarly situated" to the proposed class of opt-in plaintiffs. *See Foley v. Wildcat Invs.*, No. 2:21-cv-5234, 2023 WL 4485571, at *2 (S.D. Ohio July 12, 2023). Then the proposed opt-in plaintiffs were conditionally certified, and the plaintiffs could request that court-supervised notice of the suit be sent to potential opt-in plaintiffs. *See id.* The second step required the court to take a more detailed look in determining "whether the named plaintiffs were 'in fact, similarly situated' to plaintiffs who opted into the collective action.'" *See id.* (quoting *Comer v. Walmart Stores, Inc.*, 454 F.3d 554, 547 (6th Cir. 2006)). Under *Clark*, before the court can facilitate notice of an FLSA suit to other employees (step one), there must be a "strong likelihood" that there are other employees similarly situated to the plaintiffs. *See* 68 F.4th at 1011. This is a more stringent requirement and "requires a showing greater than the one necessary to create a genuine issue of fact, but less than one necessary to show a preponderance." *See id.* This step is not "conditional certification" as previously identified, *see id.* at 1009 ("the term 'certification' has no place in FLSA actions), but nevertheless continues to operate as a court-authorized tool for lawfully soliciting potential plaintiffs. "[S]tep two of the collective determination" prior to *Clark* remains "relatively unchanged[.]" *See Foley*, 2023 WL 4485571, at *2. This case is past the notice stage; notice has been given; it cannot (and should not) be undone and has resulted in the opting in of many putative plaintiffs, as noted above. The question now is whether these opt-in plaintiffs should be conclusively deemed similarly situated so as to be able to proceed in this action together with the named plaintiffs. If the opt-in plaintiffs are similarly situated, they will be joined as parties (as opposed to having the certification finalized, as was the manner before *Clark*).

"[T]he lead plaintiffs bear the burden of showing that the opt-in plaintiffs are similarly situated to the lead plaintiffs," *Frye v. Baptist Mem'l Hosp., Inc.*, 495 F. App'x 669, 672 (6th Cir. 2012) (alternation in original).[6] "Whether other employees are similarly situated for the purpose of joining an FLSA suit typically depends on whether they performed the same tasks and were subject to the same policies—as to both timekeeping and compensation—as the original plaintiffs were." *Clark*, 68 F.4th at 1010. "[A] common theory of FLSA violation" can also demonstrate that opt-in plaintiffs are "similarly situated." *Frye*, 495 F. App'x at 672 (citation omitted); *see also In re Fam. Sols. of Ohio, Inc.*, No. 21-0303, 2022 WL 13915151, at *3 (6th Cir. June 17, 2022). "The very point of the 'similarly situated' inquiry is to determine whether the merits of the other-employee claims would be similar to the merits of the original plaintiffs' claims—so that collective litigation would yield 'efficient resolution in one proceeding of common issues of law and fact arising from the same alleged discriminatory activity." *Clark*, 68 F. 4th at 1012 (quoting *Hoffmann-La Roche v. Sperling*, 493 U.S. 165, 170 (1989)).[7]

"All these issues tend to be factbound, meaning they depend on the specific facts pertaining to those employees. And as to all these issues, the 'other employees' themselves will usually have knowledge—sometimes unique knowledge—of the relevant facts." *Clark*, 68 F.4th at 1010.

---

[6] As discussed below, "courts relax plaintiffs' burden to show damages under the FLSA if the employer fails to keep accurate records," but these rules "do not relieve plaintiffs" from meeting the "similarly situated" requirement. *See Frye v. Baptist Mem'l Hosp., Inc.*, 495 F. App'x 669, 672 (6th Cir. 2012).

[7] The Court notes, consistent with its observations above, that the Sixth Circuit's reference in *Clark* to collective litigation is *not* a reference to the plaintiffs litigating as a "collective" (also known as "class"). It is a reference to plaintiffs litigating together in a single case as individuals joined together as plaintiffs.

Taking the well-pled factual allegations as true, the named plaintiffs have carried their burden in joining the opt-in plaintiffs. The Complaint alleges that there are employees of Defendants—whom the Complaint calls "putative 216(b) Opt-in Plaintiff class members," a group that includes all of the opt-in plaintiffs—who are "similarly situated" to the named plaintiffs because they likewise were misclassified as independent contractors by Entity Defendants and "were subject to the same policies and practices as [were the named p]laintiffs." (Doc. No. 93 at 7). The Complaint further alleges that the opt-in plaintiffs were employed to do the same tasks, at home phlebotomy services, and raise a common theory of FLSA violations, that they were not properly compensated according to minimum wage and overtime requirements. The Court conclusively recognizes that all sixty-eight opt-in plaintiffs are parties in this case—meaning, individuals properly joined together as plaintiffs in this single case pursuant to Rule 16(b).

B. <u>Dropping of Twenty-Five Parties as Requested by Plaintiffs</u>[8]

Next, the Court must determine which Plaintiffs remain before the Court for resolution. In requesting default judgment, Plaintiffs asked for judgment "only for those Plaintiffs who provided a declaration estimating their unpaid wages as well as final judgment disposing of all parties and claims." (Doc. No. 141 at 1. n.2). The Court will construe this request as a Fed. R. Civ. P. 21 request to drop the twenty-five plaintiffs that did not submit declarations. Rule 21 provides that the Court may at any time, on motion or on its own, add or drop a party or claim upon an independent determination that dropping the party is appropriate. Here, the Court has little difficulty concluding that the interests of justice support dropping these parties as

---

[8] The Court recognizes the seeming pointlessness of finding that twenty-five of the sixty-eight individuals are parties, only to drop them as parties immediately thereafter. Pointless though it may seem, this approach was the procedurally proper one based off the Plaintiffs' inclusive use of the word "Plaintiffs" and the request to dispose of all parties and claims.

requested by them,[9] given both its potential for increasing judicial efficiency in resolving this dispute and the absence of any objection.

### 2. Coverage Under the FLSA

Turning to the liability determinations, Plaintiffs have the burden of proving the FLSA covers these parties. "Coverage under the FLSA can be established by showing either (1) enterprise coverage or (2) individual coverage." *Gilbo v. Agment, LLC*, 831 F. App'x 772, 774 (6th Cir. 2020); *see* 29 U.S.C. § 203(s)(1). Plaintiffs allege enterprise coverage, which requires that "[the enterprise] has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by a person[,] and . . . is an enterprise whose annual gross volume of sales made or business done is not less than $500,000[.]" 29 U.S.C. § 203(s)(1)(A) (emphasis added). Sixth Circuit courts "have not required plaintiffs to allege the enterprise coverage element of a FLSA claim in detail" such that "[a]ny regular contact with commerce, no matter how small, will result in coverage." *See Su v. Halo Homecare Servs, LLC*, No. 1:20-cv-744, 2023 WL 4286494, at *5 (S.D. Ohio June 20, 2023) (internal quotation marks omitted) (quoting *Walsh v. Americare Healthcare Servs.*, No. 2:21-cv-5076, 2023 WL 2544509, at *4 (S.D. Ohio March 16, 2023)).

Plaintiffs adequately allege enterprise coverage as required in this circuit. (Doc. No. 93 at 4). Plaintiffs travel "to patients' homes and skilled nursing facilities where they perform blood draws and take urine and stool samples" and then "transport those samples for shipping to Defendants' laboratory in Missouri and/or drop them off at Defendants' laboratory in

---

[9] It bears mentioning that the request is being made by counsel for Plaintiffs—counsel, that is, for *all* Plaintiffs, including the twenty-five plaintiffs to be dropped. Because the requesting counsel are the authorized representatives of these twenty-five plaintiffs, the request is properly deemed made by (rather than, for example, without the consent of) these twenty-five.

Missouri." (*Id.* at 4–5). Further, Defendants provide, through their mobile phlebotomists, phlebotomy services in eighteen states. (*Id.* at 4). Additionally, Plaintiff allege that Defendants' "are an enterprise whose gross volume of sales made or business done is not less than $500,000[.]" (*Id.*). Accordingly, the Court finds that FLSA coverage extends to Defendants' employees.

### 3. Employee Status

Having just established coverage under the FLSA, the Court turns to whether the Defendants misclassified Plaintiffs as independent contractors rather than employees. Only employees are entitled to overtime and minimum wage compensation under the FLSA. *See Hanna v. Marriott Hotel Servs., Inc.*, No. 3:18-CV-00325, 2020 WL 13178011, at *2 (M.D. Tenn. May 7, 2020) (citation omitted). An employee is defined as "any individual employed by an employer."[10] *Id.* (citing 29 U.S.C. § 203(e)(1)). Interpretations of what constitutes an

---

[10] The FLSA defines an employer as "any person acting directly or indirectly in the interest of an employer in relation to an employee . . .." 29 U.S.C. § 203(d). *See Hanna*, 2020 WL 13178011, at *4 n.13 (the undersigned recognizing this definition as tautological and therefore largely unhelpful). Plaintiffs adequately allege that Defendants are employers under the FLSA by alleging that Defendants employed all Plaintiffs from periods from August 22, 2016 forward who regularly worked "in excess of eight hours . . . five days per week[]" to perform mobile phlebotomy services for Defendants. (Doc. No. 93 at 6–7).

To the extent that Plaintiffs seek joint and several liability, Plaintiffs would need to allege the Entity Defendants were joint employers. "The FLSA contemplates there being several simultaneous employers who *each* may be responsible for compliance with the FLSA (i.e., 'joint employers')." *See Martinez v. First Class Interiors of Naples, LLC*, No. 3:18-CV-00583, 2022 WL 1462965, at *18 (M.D. Tenn. May 6, 2022). The Sixth Circuit has not set a rule for establishing joint employer status, *see id.*; *Hanna v. Marriott Hotel Servs., Inc.*, No. 3:18-CV-00325, 2020 WL 13178011, at *6 (M.D. Tenn. May 7, 2020), nor has a clear test appeared following the recission of the 2020 Joint Employer Rule, *see Rescission of Joint Employer Status Under the Fair Labor Standards Act Rule*, 86 Fed. Reg. 40,939-01 (July 30, 2021). This Court need not decide what the applicable test for joint-employer status is at this time. Plaintiffs' allegations are directed toward all Defendants, and, therefore, no Defendant could be Plaintiffs' employer and liable under the FLSA without the other Defendants also being liable since, according to the allegations, they all did the same thing.

Further, justice demands this result in this case of default. Plaintiffs allege that Matthew Stover was in charge of "operational control" and "communicating directly" with Plaintiffs for all three companies. (Doc. No. 93 at 3-4). Further, they suggest that Defendants used multiple names for the same

employee are made broadly. *See id,* at \*4-5 (discussing the undersigned's view of "breadth" in the FLSA context).

While Plaintiffs allege that Defendants paid them as independent contractors, they also allege that Defendants "misclassified" Plaintiffs as independent contractors when "they were economically dependent on Defendants as a matter of economic reality." (Doc. No. 93 at 6–7). To determine whether a worker is an employee or independent contractor, courts must apply the "economic reality test" which requires courts to balance six factors:[11]

> 1) the permanency of the relationship between the parties; 2) the degree of skill required for the rending of the services; 3) the worker's investment in equipment or materials for the task; 4) the workers' opportunity for profit or loss, depending upon his skill . . . ; 5) the degree of the alleged employer's right to control the manner in which the work is performed[; . . . ; 6)] whether the service render is an integral part of the alleged employer's business.

---

companies. (*Id.* at 4). If Plaintiffs' primary contact was with one individual who worked for three similarly named companies, all of whom were directly related to Plaintiffs' activities as mobile phlebotomists, Plaintiffs may have no reason to distinguish between the three entities, even if distinctions did exist. Such distinction may have only become apparent to Plaintiffs during discovery and litigation, which Defendants have avoided by defaulting. As such, fairness also counsels in favor of joint employer status.

[11] The undersigned here will reiterate what he has said previously about multi-factor tests generally:

> "The undersigned has noted on multiple occasions that multi-factor (or balancing) tests, though often having considerable desirability and merit, tend to foster outcomes that are unpredictable on the front end, given such tests' subjectivity." *Memphis A. Phillip Randolph Inst. v. Hargett*, No. 3:20-CV-00374, 2020 WL 5095459, at \*16 (M.D. Tenn. Aug. 28, 2020) (quoting Eli J. Richardson, *Eliminating the Limitations of Limitations Law*, 29 Ariz. St. L.J. 1015, 1050 (1997) (proposing a multi-factor test to resolve civil limitations issues, while conceding that when courts "apply[ ] a multi-factor test, [it is] always an unpredictable endeavor") and Eli J. Richardson, *Taking Issue with Issue Preclusion: Reinventing Collateral Estoppel*, 65 Miss. L.J. 41, 95 (1995) (proposing multi-factor test to resolve collateral estoppel issues, while conceding that its drawback is that it "would produce unpredictable resolutions of collateral estoppel issues, in that it is so flexible and calls for very subjective judicial determinations")). This reality tends not to bode well for the prospects of a multi-factor test to resolve a question as a matter of law at the summary judgment stage.

*Acosta v. Peregrino*, No. 3:17-CV-01381, 2020 WL 5995049, at \*6 (M.D. Tenn. Oct. 9, 2020). The undersigned is well aware that room for disagreement exists with respect to the result of the outcome of the multi-factor test to be employed here. But after weighing each factor in turn, the Court believes that they collectively militate substantially in favor of finding employer status for Defendants.

*Gilbo v. Agment, LLC*, 831 F. App'x. 772, 775 (6th Cir. 2020) (alterations in original).

Plaintiffs, as mobile phlebotomists, "almost always worked in excess of eight hours each day . . . five days a week." (Doc. No. 93 at 5). Due to this, Plaintiffs "could not seek out or take on additional jobs or see additional patients outside of those assigned by Defendants." (*Id.* at 6). Defendants supplied all of Plaintiffs' equipment, apart from the use of Plaintiffs' personal vehicles to travel, (*Id.* at 5), which nevertheless included gas reimbursements in at least some cases. Plaintiffs had no ability to control the number of patients visited, which patients they visited, or the distance they drove in a day. (*Id.* at 5). Finally, since Defendants operate a mobile phlebotomy business, it is clear to the Court that without mobile phlebotomists, Defendants would likely not be in business. (*Id.* at 4). Accordingly, Plaintiffs have met their burden to prove their employee status under the FLSA.

### 4. FLSA Minimum Wage and Overtime Wage Violations

The FLSA requires that covered employers pay a minimum wage of $7.25 an hour and overtime compensation for hours worked over forty hours in a workweek at a rate of one-half times the employee's regular rate of pay. 29 U.S.C. §§ 206(a), 207(a). Failure to abide by the standards constitutes an FLSA violation, thus rendering the employer "liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). Plaintiffs have the burden to prove that they performed work for which they were not properly compensated. *See Williams*, 2022 WL 2678727, at *3 (citation omitted).

Plaintiffs allege that Defendants failed to pay them "at least the statutory minimum wage of $7.25 per hour for the time up to 40 in a workweek spent traveling, taking blood and urine samples, transporting samples to the appropriate drop-off location for shipping to

Defendants' laboratory, and completing billing paperwork." (Doc. No. 93 at 7). Further, Plaintiffs allege that they "routinely worked over 40 hours in a week," and that Defendants failed to pay them overtime wages for that work. (*Id.* at 6–8). Taking these allegations as true as required, the Court finds that Plaintiffs have met their burden and are therefore entitled to an entry of default judgment.

### 5. Damages

"[E]ven when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of the damages are not deemed true. The district court must instead conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." *Vesligaj v. Peterson*, 331 F. App'x 351, 355 (6th Cir. 2009). The forty-three declarations state that the opt-in plaintiffs, like the named plaintiffs, were not paid for some or all of their work performed and/or did not receive overtime pay. The declarations, which are generally uniform (some might say cookie-cutter) in structure and content, make general statements, varying in specificity (with some declarations having more detail than others), approximating the weeks worked, the hours worked per week, the number of visits performed during that time, when they did receive pay, and the rate of payment if it was received. These broad approximations and estimates do not meet the generally applicable burden to prove damages to a reasonable certainty. Nevertheless, this burden can be lessened under specific circumstances. This case is one such circumstance.

In *Anderson v. Mt. Clemens Pottery Co.*, the Supreme Court advised that "the remedial nature of [the FLSA] and the great public policy which it embodies…militate against making

[the plaintiff's] burden an impossible hurdle of the employee."[12] 328 U.S. 680, 687 (1946). The Supreme Court in *Anderson*, and most courts applying *Anderson*, were concerned with the quality of an employer's records when those records (as opposed to the *employee's* records or memory) were inadequate to calculate damages. In *Anderson*, the Supreme Court recognized that employers are required under the act to keep proper records, which employees rarely keep themselves and, if kept, are potentially untrustworthy. *See id.* "It is in this setting that a proper and fair standard must be erected for the employee to meet in carrying out his burden of proof." *Id.*

The Court distinguished between those instances where "the employer has kept proper and accurate records" and "where the employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes." *Id.* In the former situation, "the employee may easily discharge his burden by securing the production of those records." *Id.* For the latter situation, "an employee can carry his burden 'if he proves that he has in fact performed the work for which he was improperly compensated and . . . produces sufficient evidence to show the amount and extent of that work as matter of just and reasonable inference.'" *Long v. Morgan*, 451 F. Supp. 3d 830, 832 (M.D. Tenn. 2020) (quoting *Monroe v. FTS USA, LLC*, 860 F.3d 389, 398 (6th Cir. 2017)). In this scenario, the burden then shifts to the employer to produce evidence of a more precise amount or to otherwise discredit the plaintiff's evidence. *Anderson*, 328 U.S. 687-88. "Estimates may suffice under this standard because 'an inaccuracy in damages should not bar recovery for violations of the FLSA or penalize employees for an

---

[12] The Court notes that arguably *Anderson*'s zealous endorsement of the policy embodied in the FLSA is attributable to pro-New Deal policy preferences of Supreme Court justices. The Court here has no occasion to opine on such policy; instead it need only note that it is not necessary to consider the FLSA's provisions to be "great public policy" in order to agree that the plaintiff in an FLSA case should not face an impossible hurdle.

employer's failure to keep adequate records.'" *See Long*, 451 F. Supp. 3d at 832 (quoting *Monroe*, 860 F.3d at 412).

Thus, this Court must determine (i) whether Plaintiffs have adequately alleged that Defendant's records were "inaccurate and inadequate," thus lowering Plaintiff's burden, (ii) if the records are instead adequate, whether the lower standard should nevertheless apply when a defendant defaults without producing their record, and (iii) whether Plaintiffs' approximations meet the lower burden (if in fact it is applicable here).

A. Adequacy of Records

Plaintiffs argue that "there are no complete or accurate records to rely upon for calculating damages" because of Defendants' default and Defendants' failure to track all the hours that Plaintiffs worked. (Doc. No. 141 at 3). But default taken alone does not mean the records are "inaccurate or inadequate" in the sense meant by *Anderson*. Additionally, while Plaintiff's Complaint does allege that "Defendants did not record Plaintiffs' time worked" (Doc. 93 at 6), which could be a basis for finding an inadequacy of records, Plaintiffs' other allegations and evidence contradict this allegation so that is it not well pled.

The underlying factual basis for the allegation that the Entity Defendants did not record Plaintiffs' time is explained in the declarations. They say variations of "Stover did not record [the employee's] time worked because it paid [the employee] based on [a different metric.]"[13] It does not follow that because an employer did not pay by an hourly rate, the employer necessarily did not record the employee's time worked. The regulations for calculating overtime wages contemplate payment at a rate by job and provides a formula—which Plaintiffs apply in their affidavit calculations—to translate that to an hourly rate for the purposes of

---

[13] The Complaint states that the rate of pay is based on invoices of the visits performed and related mileage, not by the time worked. (Doc. No. 93. at 7).

overtime payment and record keeping. 29 C.F.R. § 778.112. Therefore, the payment schedule alone is insufficient to support the conclusion that the Entity Defendants' records were wrong. Specifically, Plaintiffs would need to allege additionally that the Entity Defendants *did not know* how many hours were worked and therefore could not have kept the proper records. But Plaintiffs themselves raise the distinct possibility that the Entity Defendants knew (perhaps with precision) how many hours Plaintiffs were working, alleging that the Entity Defendants "*were aware* of the long hours . . . worked each day because they scheduled Plaintiffs' visits." (Doc. No. 93 at 6) (emphasis added). Therefore, the allegation that the Entity Defendants did not record Plaintiffs' time is insufficient to find that the Entity Defendants' records were wanting.[14] While perhaps unlikely, it is altogether possible that the Entity Defendants kept a perfect record of their employee's hours and rate of payment in accordance with the FLSA requirements while still underpaying their employees.

B. Nevertheless, the *Anderson* Standard Applies[15]

Just as "[t]he employer cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had he kept records in accordance with the [legal] requirements," *Anderson*, 328 U.S. at 688, so too, the employer cannot complain about this burden shifting when they are in default and effectively evade the chance for Plaintiff to secure production of those records at all.

As described above, the nature of FLSA claims and the employer's superior position (as compared to the employees' position) to have the records needed to determine damages

---

[14] Further, to make that calculation necessary for proper records, one also needs to know the actual amount paid. Because the declarations state that the declaring plaintiff believes Defendants maintained payment records, this could not serve as an independent basis for improper recordkeeping either.

[15] Some caselaw refers to the standard by the other party's name, saying instead, the "*Mt. Clemens* standard."

militate against preventing the employees from proceeding with their claim because of the shortcomings of the employer. The Sixth Circuit has held to similar effect in a case where default was entered *after* discovery was sought. The Circuit held that, "[u]pon failure of the appellant to disclose such information as it had," it was proper for a district court to rely on "the most accurate basis possible under the circumstances." *Michigan Window Cleaning Co. v. Martino*, 173 F.2d 466, 468 (6th Cir. 1949) (citing *Anderson*, 328 U.S. 680). It stands to reason that the same is true when default is entered before discovery is served. *See Santillan v. Henao*, 822 F. Supp. 2d 284, 294 (E.D.N.Y. 2011) ("by defaulting, defendants have deprived the plaintiff of the necessary employee records required by the FLSA, thus hampering plaintiff's ability to prove his damages"); *Pavia v. Around The Clock Grocery, Inc.*, No. 03 CV 6465 ERK, 2005 WL 4655383, at *5 (E.D.N.Y. Nov. 15, 2005) (applying the *Anderson* standard when "no records have been produced as a consequence of defendants' default").

This Court refuses to hold that a plaintiff is stuck with the general (meaning, comparatively high) burden based on a purported failure to "secur[e] the production of [the employer's] records," *Anderson*, 328 U.S. at 687, when the employer has not participated in the litigation process by which such discovery and production of records would naturally occur. *Cf. Martinez v. First Class Interiors of Naples, LLC*, No. 3:18-CV-00583, 2020 WL 1694571, at *7 (M.D. Tenn. Apr. 7, 2020) ("in order to properly compensate Plaintiffs for their lack of access thus far to documents and information that has been withheld, the Court orders that Plaintiffs are [partially] entitled to the relaxed burden of proof as to damages as articulated in *Anderson*."); *Abdoul Malik Tahirou, Plaintiff, v. New Horizon Enterprises, LLC, et al., Defendants.*, No. 3:20-CV-00281, 2023 WL 5934589, at *5 (D. Conn. Aug. 3, 2023) (recommended ruling) ("When the employer fails to produce complete records in discovery,

thereby frustrating this 'easiest' of methods, courts often permit plaintiffs to meet their burden 'by relying on recollection alone.'"); *Long*, 451 F.Supp.3d at 833 (relaxing the standard when records were not produced *and* allegations supported that the records were likely inaccurate anyway).

Further, it is highly plausible that a plaintiff could be unaware of an employer's recordkeeping practices and unable to make any allegations on the records' adequacy until such records were produced. If a defendant could restrict plaintiff to a higher burden simply by defaulting, Plaintiffs would therefore be incentivized to make false allegations of poor recordkeeping so that, should Defendant default, that baseless (but seemingly well-pled from the eyes of the court) allegation might be taken as true.

Therefore, this Court holds that where a defendant defaults before the plaintiffs can request production of their records "and the employee cannot offer convincing substitutes," the burden shifting framework of *Anderson* applies.

C.  Plaintiffs' Have Met Their Burden.

Plaintiffs have met the lower burden. Based on the forty-three declarations and the allegations in the Complaint, the Court finds that Plaintiffs provided "sufficient evidence to show the amount and extent of [their] work as a matter of just and reasonable inference." *See Monroe*, 860 F.3d at 398–99. The declarations provide "the best estimate" of the dates of employment, the number of visits conducted, the pay per visit if any, and the number of hours worked for each plaintiff. Each then calculates the relative damages according to 29 U.S.C. §§ 206-207 and 29 C.F.R. § 778.

Two of the declarations had computational mistakes.[16] With those corrections, Plaintiffs are entitled to recover unpaid minimum and overtime wages totaling $1,521,533.97 (as opposed to the requested $1,506,648.37). Liquidation damages are also awarded in an equal amount, pursuant to 29 U.S.C. § 216(b),[17] and post-judgement interest is awarded pursuant to 28 U.S.C. § 1961. Accordingly, Plaintiffs are entitled to recover a total $3,043,107.94, and post-judgment interest shall accrue on such amount as provided by law.

CONCLUSION

For the foregoing reasons, the Motion (Doc. No. 140) is GRANTED,[18] and default judgment is hereby entered against the Entity Defendants (Stover Diagnostics, Inc., Stover Medical Logistics, Inc., and Stover Medical Physicians Services, LLC) jointly and severally

---

[16] As it happens, these mistakes were actually to Plaintiff's detriment. The declaration of Tina Anderson (Doc. No. 141-3) stated that she worked "12 hours per day and 5 days per week" or "50 hours per week." The (erroneously stated) fifty hours then gets plugged into her calculations. Properly using sixty hours instead brings her overtime payment to $13,056 and her total payments to $30,456.

The declaration of Ellen Baldwin (Doc. No. 141-6) similarly miscalculates eleven hours per day, five days per week as fifty hours. Instead using fifty-five hours as appropriate, the overtime wages are $25,132.8 and the total number to $69,792.80.

Any other discrepancies resulting from rounding have been accepted as falling within the bounds of reasonable certainty.

With these corrections, the total sum of unpaid wages is $1,521,553.97.

[17] While a district court has discretion not to aware liquidation damages if the employer acted in good faith and with reasonable grounds to believe they were not in violation of the FLSA, the burden of that showing is on the defendant. *See Stewart*, 2021 WL 3037499, at *6 (quoting 29 U.S.C. § 260). Clearly, as is the case here, where the defendants are in default, they have not attempted such a showing, let alone carried their burden.

[18] The Court notes that it has granted in full the relief requested in the Motion. In fact, it has granted relief to a somewhat greater extent, inasmuch as it has made corrections to Plaintiffs' mathematical calculations of damages that have resulted in a slightly higher award of damages than Plaintiffs had suggested.

in the total amount of $3,043,107.94.

IT IS SO ORDERED.

_Eli Richardson_
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE